I'd like to reserve three minutes for rebuttal. Yes, you may have it. Thank you. Regardless of whether you apply a strict construction to the phrase willfully violates or employee willfully violates in the Internal Revenue Code or whether you use a conventional contempt analysis under Section 105 of the Bankruptcy Code, which also relies on case laws as willfully violating as the construct, I submit a creditor, it's pretty unnatural to say that a creditor willfully violates the discharge when there's a reasonable, when it reasonably appears to that creditor after investigation that the discharge doesn't apply to the particular So how did we get here? What's the main counter to that point? Because it is a pretty unnatural reading. The main counter is that in 1998, when the Internal Revenue Code was amended to add Section 7433E, it was abundantly clear in the law that the willful violation test in the Bankruptcy Code, 362H at that time, applied essentially what's strict liability. And if you had a willful act that violated the stay, and you had knowledge of the stay, you were liable for damages. And it's pretty hard to collect the debt without a willful act. So that pretty much means that if you have notice of the stay, you're liable for damages. Well, assuming that's correct, and I don't think it is, that the law was that clear, it sort of doesn't matter because there's a couple flaws with that thesis, even if it is correct. Two distinct problems, that is. The first is that even prior to 1998, putting aside whether it was clear that the test was almost strict liability, there were four circuits, this one among them, that had found exceptions, that when there was a particular statutory exception or other conventional exception to the stay, so that it didn't apply, that although good faith was not a defense, that was not a willful violation because there was uncertainty over the applicability of the injunction. This court was Nelson in 1993, it was University Med Center in the Third Circuit in 1992, it was Merchant in the Sixth Circuit in 1992, and Shirk in the Fifth Circuit in 1992. All those are cited in our briefs. There were no circuit cases before 1998 dealing specifically with the standard for the discharge injunction with one exception, and that is the Eleventh Circuit in Hardy. And in Hardy, the debt was undisputedly discharged, so it could not have possibly raised a possibility even for the argument the IRS is making here that there should be an exception. The lower court cases seem to all be on our side, and even since 1998, more and more of them, and I've actually found several that aren't cited in the briefs that the court would like, and they're lower court cases. Why are the post-1998 cases that relevant? I mean, the question is what Congress was doing in 1998. I think they're relevant because they still interpret the meaning of willfully violates, and if you're basically saying, well, what's the meaning of willfully violates? You have to look at, I think, conventional language, strict construction, you do have to look at what modifies what willfully modifies violates, and the courts have basically, and even there were some lower court cases, by the way, before 1998 that had found these exceptions, exactly the ones we're arguing, the courts have kind of recognized that in a conventional contempt analysis, that's just simply not willfully violating an injunction, if you don't know the injunction applies to you, and you have a very good argument that it doesn't apply to you in particular, a legal argument. Doesn't your settlement agreement sort of waive all of this? Your settlement agreement means the only thing here, I think, is what does willfully mean. And that's essentially what I'm arguing about. I'm not sure, when you go back to, isn't there a traditional way that this statute has been discussed in all the cases, the recent cases, that it's not a very high standard, you know about it, isn't that enough? Actually, all the recent cases on discharge violations say that the standard is in our favor, all of them, Taggart and the Ninth Circuit, there's about six or seven non-Ninth Circuit cases that don't rely on the Ninth Circuit precedent, that all say the applicability of the discharge to the debt, if it's not clear that it's applicable, is a defense, they all say that. And so, yes, we are dealing with the meaning of willfully violates, and our settlement certainly preserves the ability to argue that the Internal Revenue Code shouldn't be interpreted differently than the rest of the law. Go ahead. Yeah, let's put the waiver question to one side and deal with the merits of the issue. Justice Souter tried to, in his usual subtle way, get you to focus on what Congress intended in 1998. So there's sort of three models. One is in the absence of any legislative history, and there is none here. You shouldn't look to anything other than the plain language, and you say that works in your favor. Another model is you look to Supreme Court case law for the definition of willfully violates. Another model is that Supreme Court case law is not specific enough as to the particular problem we have here, and so you look to more specific law. And the District Court adopted that model. It looked to the specific law. Unfortunately, no Supreme Court law, but circuit law. And it said six circuits, I think, five or six, six circuits had adopted what you call a strict liability standard. I'm not sure I'd use that term, but eliminating good faith as a defense. Okay? So what's wrong with what the District Court did as to Congress's intention in 1998? So that's correct, and those three paradigms are what's at issue here in the Dupley. The Supreme Court, this court has basically said, I believe in a case called Hillstrom at 354 Fed 3rd 27, that you look to Supreme Court definitions, and it's presumed that Congress will know the Supreme Court law. That was also said in McLaughlin, which is cited in our briefs in the Supreme Court. What I would say is that when you start looking at the circuit court law, the circuit court law was simply not clear in 1998. I take it you're making a two-pronged argument. The first is you shouldn't be looking at circuit law at all. You should, before you impute an intent to Congress against the backdrop of what the law is, you should be looking to Supreme Court law. Okay, your second prong is it wasn't clearly established even at the circuit level. Right, and I wanted to turn to the second prong at this point. The second prong is that while courts had said that an act that violates the stay is willful violation if you have notice of the they had not extended that to simply knowing of the discharge, which is much more amorphous. The discharge doesn't apply to all debts. The state does apply to all debts. Okay, the counterargument to that is, look, in this 1998 provision, it refers both to stay and standards to discharge injunctions and stays. Totally agree, and we would not argue that there's a different standard for this. That's all you were in your brief. No, I don't think so. What we're saying is that when there's a statutory exception, even to the stay, 362B, for example, as this court ruled in Nelson, was arguable. Therefore, it wasn't a willful violation by the ex-wife, even assuming which this court didn't decide that it was property of the estate. We're saying that's also that that's been applied. That was the same thing was applied in Sullivan using a recoupment analysis that HUD v. Sullivan in the Third Circuit. The same thing was applied as this court applied in the Shirk case, the spousal exception for 360B. So we're arguing that when there is an arguable statutory exception, contrary to the kinds of cases that normally come up, the kinds of cases are, there's no statutory exception, the stay is applicable, there's no argument it's not applicable, and the creditor goes, well, I didn't intend to be coercive. I didn't intend my threats to levy to be coercive or something like that. You know, I'd like to go back to something that bothers me. Are you suggesting that willful as to a creditor, not the government, is different than willful as to the government? Is that your argument? That the government should be treated differently? That's not our first argument. Our first argument is that for all creditors, willfully violates the discharge as used in the case law because it doesn't have willfully violates in the statute, does allow for an argument that the debt is not applicable. And I think you have to put that together with the fact that Section 523C expressly doesn't require creditors to get a declaratory judgment in advance of the, or to preserve, it's not even really declaratory, you need to do it to preserve your debt. They don't require that for certain kinds of debts. So follow me a little bit. So let's assume I'm a regular creditor and this issue comes up. We have a trial. I lose. Is that regular creditor then in violation? Did he willfully violate when he tried to collect? No, not if he had a reasonable argument for non-dischargeability. Then Congress has not enjoined collection up to that time. And most of the courts have said that. They have agreed that, no, that's not a violation because until the, it's clear that the injunction applies to your debt, you don't know, you don't know you're enjoined and you are allowed to collect. So basically, you know. I'm sorry, was that pre-1998 case law? Did that case law exist before 1998? So, yes, there are a couple of cases before 1998 that are not in the higher court decisions, but they all go our way. What are bankruptcy court decisions? I think one is a district court decision. Let me see, Your Honor. So there are, I'm sorry, there are bankruptcy court decisions. One of them is Worthing, which is cited in the Dunn case that was in our 28-J letter. That's a 24-BR-774-777. No, don't spend your time giving us citations. If it's not in your brief, file a 28-J letter. May I list the 28-J letter, the additional citations? Yes, you may. Now I'm going to turn it back to Judge Stahl, whose question I interrupted. Well, what I'm trying to get at is that you, I think, are asking us to change how willful has been interpreted generally. So if as an individual creditor, I had done exactly what the government did here and said, look, I didn't file in the bankruptcy court to accept my debts from the disclosure, but it's not clear in what the, from the discharge, it's not clear what the discharge actually discharged. If I did the same thing, lost, would you make the same argument as to that individual creditor? Absolutely, and we did, and most of the courts have held that both before and after 1998. So the, it's your position that willful really means something much more than just knowledge. Because what the, what I think your brother's going to argue is that you have knowledge, that's enough, that's willful. That is what he's going to argue. And what we would say is that you need to look at the traditional contempt analysis where there is an exception if the dis, if the injunction is not clear. In the cases in which good faith has been held not to be a defense, the injunction of the, usually the stay, not the discharge, is very clear. The stay is very broad. There are no debt exceptions. There are some particular exceptions for certain acts. The discharge, as Dunn points out, the case we cite in the 20th year letter, the discharge doesn't apply to all debts. In fact, there's quite a lot of number of debts it doesn't apply to. And there's only three kinds of debts you have to bring that kind of premature declaratory judgment advance. By the way, the IRS has a declaratory judgment act hanging around its neck. So, you know, 2201 of Title 28 says we can't bring declaratory judgments. So we have to wait for the debtor to seek to enjoin us, and we're going to make this injunctive when we're trying to collect. You could not have gone into the bankruptcy court to object to the discharge on the grounds of the fraud in the tax returns? Well, so as objecting to the discharge is very different. That we could have done. That means the debtor doesn't get a discharge at all. Right, exactly. That we could have done, and we didn't really have grounds for that. That means a false statement on the bankruptcy petition or something like that. We only have grounds that the debtor willfully attempted to defeat the tax, not that he lied on his schedules or concealed assets from the bankruptcy court. So we were left with, can we claim these taxes are non-dischargeable? And I think it's highly doubtful that we could seek a declaratory judgment. And if you look at the, if you do a search of bankruptcy court, and in the bankruptcy courts, if you do a search of 523A1 and IRS, you'll find over a thousand cases. And there's like three or four in which we brought the action, and only then we coupled it with a discharge objection at the beginning, and dischargeability was in the alternative. But why couldn't you bring the action with greater frequency? Excuse me? Why couldn't you bring declaratory judgment actions with greater frequency? Well, I'm saying there are only three. Why, why, why, what does that prove? I think it shows that traditionally it's been understood that when you don't, when you have a tax debt that's non-dischargeable, and given the IRS's normal ability to collect without a judgment, that's the standard way the IRS has levy powers and stuff, that the IRS is not required to go in, doesn't go in, and there is a jurisdictional hook there that might be a problem. 2201 of 28 U.S.C. says you can't get declaratory judgments for anything relating to taxes. So we may be prepared. Could that be because, could that be because it is assumed that the government, as the taxing authority, is in a position to know better, to have a better source of information, so that it can draw its own conclusion reliably as to whether the discharge injunction applied or not? Yes, but I think that... If that is the case, what's wrong with the strict liability rule? Well, what's wrong with the strict liability is when the IRS does that, and conducts an investigation, and it believes it is correct, you're holding it to a strict damages standard that simply doesn't fit the statute, and that no other creditor has that problem. Every other creditor. Well, you say it doesn't fit the statute. I mean, the Supreme Court authority includes the proposition that willfully is a term of many meanings. So there's something protein about willful as a general proposition. And so I guess that's what gives me pause with the argument you just made. But when you say that, that willfully has many meanings, which comes most, I think, recently from the Safeco case, which is in our brief, which I'm sure you're familiar with. The Safeco case points out that the most natural reading is that willfully modifies violation, and it cites about six or seven Supreme Court cases, maybe four or five Supreme Court cases, that reject this kind of strict liability analysis, and basically say there has to be some center in all of them. And it's the natural reading of the grammar as well. We do have a strict construction rule here as well. And I would say that why should we be liable more strictly than other creditors? There are creditors where they've levied on the debtor's wages due to a judgment, and then it turns out the judgment was discharged,  and they're held not to be liable. But my question that started this was, could it be that the congressional assumption was that the taxing authority is in a better position to determine without a declaratory judgment whether, in fact, the injunction applies? And for that, that is the reason that, for example, the government does not have to... I don't think that's the only plausible construction, which is the rule for statutory waivers of sovereign immunity. And in that regard, I neglected to answer Judge Lynch's question about the two different standards in that regard. There is still an exception for 362. Individual debtors, only individuals, not corporate debtors, can still bring 362k cases. And there under whatever standard that is for the stay only, and for individuals, we can argue about whether an exception to the stay is more than a good fake defense. It's a reasonable defense, like many courts have held. But when you go over to the discharge area for both corporations and... Corporations can use state violations as well, but they have to use 7433. Both individuals and corporations have to use 7433 for discharge violations. And I suppose, theoretically, someone could come up with a policy argument, well, the IRS's ability to do investigations is so all-knowing that it shouldn't be allowed to make a mistake, even though a private creditor can. But I think that's a pretty strange reading from the phrase willfully violates, and the ambiguities that it normally carries with it in the law and the rule of strict construction of ambiguities in favor of the United States in that situation. Do you think I understood this correctly? The IRS may decide it has no reasonable grounds to object to the discharge injunction writ large, but may have specific exceptions which are built into the statutory scheme. If it, in its judgment, feels it has a good faith reason to assert that there is an exception to the discharge injunction, it may not probably bring a declaratory judgment action. It has to wait until the other party files something. But if the IRS loses despite the reasonable belief, the IRS is then subject to a damages action. That damages actions will follow under the district court ruling every time the IRS loses. Not only that. It will follow if the IRS wins and then loses on appeal, even if it relies on the district court judgment, because there's no exceptions under the other side's argument. Basically, once you do a willful act, it doesn't matter whether you knew the injunction applied and even no matter how good your case was that the injunction applied. So if you win in front of the bankruptcy judge and a district judge reverses on appeal or this court reverses on appeal, you still have a willful violation and will be strictly liable. I think that's just a very strained reading. Okay. Thank you. Thank you, Your Honor. Good morning, Your Honors. My name is John Branson. I represent the appellee, William Murphy. Speak up a bit. Yes. Why don't we just get the mic closer to you. It might be easier. John Branson for appellee, William Murphy, Your Honors. Good morning. I wanted to first address Judge Lynch's opening questions about how to construe statutory terms. And I don't disagree if the Supreme Court has provided a construction that that would govern. But before going to plain meaning. So you disagree with their plain meaning argument? Yes, that is pretty far down the line. If there's no Supreme Court precedent, the Supreme Court itself has held that it is presumed when Congress enacts a statute that uses a legal term of art, that it is presumed to understand the background law in which that term of art is used. And in this case, we're talking about the term willful violation and willfully violates that was extremely well understood in the bankruptcy context. In the state context, violation of the state. Primarily in the state context. And the reason for that was that that was the only approved means of recovering damages. There was no congressionally authorized manner to recover damages from the IRS. Specifically set forth in 524. And for that reason, the bankruptcy courts relied on their inherent contempt powers. And it was completely discretionary as to whether they would award damages. That was different when Congress enacted 362H. And then later abrogated its sovereign immunity in 1994. Allowing creditors to seek damages against the IRS for state violations. And so you have a plethora of cases that came out of that. And you're correct. Six out of the 11 circuits, all six that had addressed the issue squarely had found complicated. I'm sorry, you're implying all six were about the IRS. But that's not the case. No, I didn't mean to imply that. Six circuits that had addressed the meaning of the phrase willfully violates in the state context had adopted the standard that was adopted by this court in Kinev and later in Pratt in the discharge context. No circuit that had addressed the issue Actually, I don't read Pratt the way you do, but go on. It is true in regard to the discharge injunction, the law was less well established for the reason that there was no express mechanism for the recovery of damages in 524. It was left to the discretion of the bankruptcy courts. But the term was still used. I found some 80 cases as of 1998 that had used the term willfully violates in the discharge context. The only circuit that had addressed the question squarely had found the standard that is advanced by the appellee in this case, which my counterpart refers to as the strict standard. That gets confusing a little bit because sometimes it depends whether you're looking at it from the viewpoint of the debtor or the creditor. But we'll use the term strict standard that the 11th Circuit in Hardy did find that and promulgate that standard that has been widely cited and relied upon by other circuits, both in the stay and discharge contexts. I think, so the plain meaning, the cases I would refer the court's attention to, the Supreme Court cases, U.S. v. Shabani in 1994, the Exxon Mobil case, 2005, cited by the district court in its decision, and then this court's decision in U.S. v. Cochiere in 1997. Didn't the Supreme Court, sort of six months before Congress acts in 1998, in that bankruptcy case from Hawaii, I can't pronounce the first name, didn't it give a definition of willfully violates, actually the language there was a little different, that comports with the IRS's view? Yes, I believe that's a fair characterization. And I think the distinction in our situation is that there was a well-established meaning for that term in the bankruptcy context at the time Congress enacted the statute in 1998. If you look at the FAA v. Scobart case... Was that true both for the stay provision and for the discharge injunction? No, it's not equally true. It was far more well-settled in the stay context. But there was no circuit that held otherwise in the discharge context. It was just the law was not as well-settled. But I agree with Your Honor that because the discharge and stay provisions, 524 and 362, were referenced in the very same sentence that Congress uses the term willfully violates, then under the Supreme Court's case in Hall, it can be presumed that they intended to apply the same meaning in both contexts. And the similarity is we're now talking about the ability of the debtor to recover damages against the IRS, not just for stay violations, but for discharge violations, too. And I think that's what... I'm sorry. Could you address the last colloquy I had with counsel for the IRS, which is if they lose a case in which they have a good-faith belief that they fall within an exception to the discharge injunction, they are then liable for damages in the bankruptcy court, the district court, or the court of appeals if they lose at any point? They're only liable for damages if their willful violation caused the debtor to suffer damages, and frequently the debtor's not able to establish that. But in that regard, they'd be treated no differently than private creditors. Since then, haven't... at least in some instances for private creditors, hasn't Congress imposed a sort of good faith if you acted in good faith, we're going to cap any damages at a certain amount? Congress has referred to good faith in this context only one time, and that was when it amended Section 362 in 2005 when H became... subsection H became K, it created a good faith exception if a creditor willfully violates the stay but had a good faith belief that the stay didn't apply under a different subsection, then the debtor is limited to actual damages only and no attorney's fees. Congress... There is no such limitation under your position in the damages action against the IRS. Well, the analogy I would draw is that if the IRS had a good faith belief in the rightness of its action and it had a good faith litigating position, then it can be shielded from attorney's fees in the 7433 context by reference to 7430 because the debtor has to show that the IRS was not substantially justified in its litigation position. So just as in 362 there's a limitation on attorney's fees, likewise there is now one protection for the IRS. And I think the reason this is important is we're talking about compensatory damages. We are not talking about sanctions for bad faith in the contempt context, not just in bankruptcy, but in other contempt contexts. The good faith, bad faith is only relevant in terms of whether the court can issue contempt sanctions. It has never been relevant for purposes of compensatory damages. So how do we end up with a $175,000 damage award here given... 75. Oh, 75,000. What is the damages award here? In this case, the parties stipulated as to the damages. Yeah, but what is it? Well, there's no agreement on that, but in this case, the debtor owned and operated a commercial insurance brokerage business. He had relationships with major insurance carriers and he found health and life policies for his business customers. When the IRS sent its levies in February of 2009, it sent levies to all his major insurance company contacts. Okay, I get it. And they formed very negative opinions about Mr. Murthy. Thereafter, he was unable to maintain those relationships. Do you dispute, though, that the IRS had a reasonable basis at the time they set these tax exceptions? Yes, we have always disputed that the IRS acted under a good faith belief that it had the right to collect these debts. As I read Judge Haines' decision in the bankruptcy court, it was he ruled against the IRS because the attorney for the IRS had failed on summary judgment to come up with any evidence. He simply made allegations as though it was a 12B6. And Judge Haines says, well, I'm really surprised that there is a lack of any evidence here and given the lack of evidence, I have to enter summary judgment. Is that a fair characterization? Yes, that is not an unfair characterization, and I'd say it is a fair characterization. But regardless of whether the result was partly due to the competence of the counsel or the effectiveness of the counsel, that didn't resolve the question of whether if the issue had been truly litigated, if the IRS had presented the evidence it said it had,  We argue that Judge Haines still would have found the debts to be dischargeable. The IRS in this case is seeking, the United States is seeking to take the IRS back to its pre-1998 position where an award of damages is left to the discretion of the bankruptcy courts pursuant to its inherent power under Section 105, namely, whenever it deems the award of damages to be necessary and appropriate. What Congress did when it enacted the amendment to the Taxpayer Bill of Rights, not the IRS Bill of Rights, the Taxpayer Bill of Rights, it took that discretion away from the bankruptcy court in the context of damages actions against the United States for willful violations of the discharge injunction by the IRS. It was no longer going to be left to the bankruptcy court's Section 105 discretion about whether it was necessary or appropriate to award damages in order to effectuate the provisions of the Code. So if the lower court here had decided that the standard for willful violation was not met here, you would say this court would be required to reverse and order the imposition of damages? If I understand your question, if the court had found that... Could you repeat your question? I'm sorry, Your Honor. If the decision below had been that the court felt it should not award damages against the IRS because they had a reasonable belief, you would say to us that the court had no discretion whatsoever, the trial court, the lower court, to reach that conclusion and we would have to reverse and order damages to be awarded, assuming damages could be proven? Based on the established meaning, I would say yes, we would be the appellant in this case, if that answers your question. Yeah, it logically follows from what you said earlier. I also would like to point out that it has been more than 23 years since Congress first abrogated its sovereign immunity to allow debtors to recover damages against the United States for violations of the stay or the discharge injunction, and not a single case has ever held that the IRS or the United States is entitled to a special definition or more forgiving standard for willfulness than has been applied overwhelmingly to private creditors. Isn't this the first case since the 1998 statute to address the question? My law clerks couldn't find any other circuit cases that had addressed this post 1998. I have found no case in which there is evidence that this argument made by the IRS, in this case, has been made by the IRS or any other agency of the United States in any other case after 1998 or before. I draw my own conclusions about why that is, and I urge you to draw your own as well. Thank you. Thank you. First, I think it's extremely important to point out that despite my adversary saying there are 80 cases that deal with this in the discharge context prior or after 1998, not a single one ever says that we're liable when there's a discharge dispute. And with private creditors too, they all involve undisputedly discharged debts. There are about half a dozen to a dozen cases that have, a couple before 1998 and since, resolved the issue with a dispute of discharge. They've all gone our way, every single one, private creditor and public. He's also wrong that we haven't made this argument. We made it in pain in the court in Illinois, in District of Illinois, and we won it in pain. That's in our briefs. We eventually won that there was no violation in the Seventh Circuit in pain, but we first won in the bankruptcy court where the court said we did violate the discharge. It said it was discharged, the debt, and it said, but it wasn't willful because we had a good argument that it wasn't discharged. Then eventually, as often happens in these cases, the circuit said it wasn't even discharged. So that kind of shows the problem with the amorphousness of this discharge injunction. There are, in the Kalahau, that's how I pronounce it, the Geiger case, I'm not sure I got the pronunciation right, that was about willful injury, and I do think that the most important thing about that case that the Supreme Court did was give a grammar lesson. It basically said that the Ninth Circuit had inserted words that just aren't in the statute between willfully and violates. The other point I'd like to make is that there is, I think, a distinction, a reason for a distinction, between the language in 362K, which, again, I say still applies, and the language in 7433. It's an adverb-verb context, which I think is a little hard to separate, but more importantly, it says the employee has to violate. If you look at the history of the law in the 360K, they reject that. In fact, right before 1998, a couple of courts had said, no, we impute knowledge throughout the entire IRS. And then Congress issues a statute that says the employee who does the collection has to willfully violate the discharge of the stay. So effectively overruling those cases that say you're going to impute knowledge. Now, that said, you can still impute knowledge throughout the whole IRS for 362K, because 7433 says 362K still applies, and you can still go to bankruptcy court under 362K if you're an individual. So there's that context. My opponent is also wrong in the contempt context. The only difference between strict liability and non-strict liability is for sanctions for bad faith. In fact, very many cases say that compensatory contempt sanctions, which is one of the forms of contempt sanctions, are not available if the injunction is not clear. This court has said that in Hawkins. So you can't get compensation either. You can get the injunction stopped, or it's going to be the behavior stopped, and that's true here, too. We're not suggesting, by the way, that he couldn't have stopped the IRS. In fact, we stipulated to a preliminary injunction immediately. All right, Judge Stahl has a question for you. Assume that the case had been tried as you would have preferred it to have been tried, and you had still lost below. Let's assume that the IRS had put in the evidence and the court hadn't agreed with you, and you had lost. Would you still be here making the same argument we are making now? Yes, absolutely. Because what I'm saying is where reasonable minds can differ, you can make that argument. Now, I certainly think if the court found, as my opponent just told you he would argue if he had to, on remand here, for example, he would like to argue that, notwithstanding all the evidence we had, and by the way, we did have evidence at the time, and what we showed in the summary judgment in this damages suit was that we had the evidence back then, and that the employee got a legal opinion from the AUSA to say that, yes, we have the evidence. You can go ahead and collect. So that's why we say it was good faith. He would like to say, notwithstanding all that evidence, this was a vindictive approach by the IRS, and if that's true, we would lose then. If that's true, that would be different. Then we would lose. If we came in and said, and tried to try the case by our shoestrings, essentially, and lost, and we didn't have very much evidence at all, and the court said... Let's assume the evidence is... I'm trying to look at this and just say, how do you get to where you are? Assume, for the moment, that you tried the case with the evidence that you had, and the court didn't agree. You said, this is a discharge debt. Would you be here making the same argument that willful doesn't mean what we all thought willful meant, and that there's another rule that we should be adopting now? Yes. Assuming damages have been awarded against you. Yes. We would still be appealing, and we would be arguing contrary to what you just said, though, Your Honor. We would be arguing that it's not contrary to what all the courts said. All the courts have held that if you have a good faith dischargeability dispute, it's not willful. All the ones who face that issue have gone that way, both before, and not too many before, and about half a dozen after 1998. Okay, Counsel. We've given you a great deal of leeway.  Thank you very much, Your Honor. How fast do you want that 20HA letter with the solicited cases? The next 10 days. All right. Thank you very much, Your Honor. And, of course, serve it on your opponent. Yes. Thank you, Your Honor.